This document was signed electronically on October 6, 2016, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: October 6, 2016



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| In re | ) | |
|---|---|---|
| | ) | Case No. 15-50323 |
| BEVERLY LOUISE MIRAGLIA | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Adversary Proceeding No. 15-5054 |
| | ) | |
| | ) | |
| BEVERLY LOUISE MIRAGLIA, | ) | Judge Alan M. Koschik |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

MEMORANDUM DECISION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now before the Court is the motion for summary judgment (the "Motion") filed by

Defendant United States Department of Education (the "Defendant") against Plaintiff Beverly

Louise Miraglia (the "Plaintiff"), the debtor in the underlying bankruptcy case in which this adversary proceeding arises. For the reasons set forth herein, the Defendant's Motion for Summary Judgment will be granted.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. Venue is proper pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## SUMMARY JUDGMENT STANDARD

In bankruptcy proceedings, including adversary proceedings, a party may move for summary judgment at any time before 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise. Fed. R. Bankr. P. 7056 (otherwise incorporating Fed. R. Civ. P. 56). When a party so moves, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party asserting that an alleged fact either cannot be genuinely disputed, or conversely that it is genuinely disputed, must support that assertion by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). When a summary judgment motion is filed against a party who bears the burden of proof on an issue at trial, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party bearing the burden of proof in such a situation "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In this case, therefore, as movant, the Defendant must cite record materials showing that it cannot be genuinely disputed that the Plaintiff cannot prevail at trial on at least one essential element of her case.

If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion and may grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

**UNDISPUTED FACTS AND PROCEDURAL HISTORY**

Prior to the filing of her bankruptcy petition, the Plaintiff attended Brown Mackie College, Stark State College, and the Art Institute of Phoenix. She financed her education with student loans which are currently held and insured by the United States Department of Education. The Department of Education holds seven direct Stafford loans on which the Plaintiff is obligated as of July 16, 2015, pursuant to two master promissory notes executed October 7, 2010 and August 12, 2012. Her indebtedness on those loans as of the petition date was $27,297.77.

The Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 28, 2015. On her Schedule F, she scheduled an unsecured debt to "Dept of Education/NelNet" described as a "student loan" in the amount of $24,134.00. She also scheduled an unsecured debt to "US Dept. of Education" described as a "student loan" in the amount of $26,049.24. She also scheduled an unsecured debt to "Windham" described as "Collection Fees / Student Loan" in the amount of $32,587.38. None of these debts were scheduled as contingent, unliquidated, or disputed. It appears from the pleadings in this adversary proceeding that these Schedule F entries from the bankruptcy petition may be duplicative.

The Plaintiff filed this adversary proceeding on June 15, 2015. In her Complaint, she alleged that she "cannot maintain, based on her current income and expenses, a minimal standard of living if forced to repay" her student loans (Compl. ¶ 12), that "this state of affairs is likely to persist for a significant portion of the repayment period" (Compl. ¶ 13), and that she "has made good faith efforts to repay the loans" (Compl ¶ 14), though she provides no further factual details supporting any of these allegations. On this basis, she asks that her student loan be held dischargeable as an undue hardship pursuant to 11 U.S.C. § 523(a)(8) of the Bankruptcy Code.

The U.S. Department of Education filed its answer on August 6, 2015, contesting service of process and also substantively denying, for lack of knowledge, paragraphs 12-14 of the Complaint, among several others.

On March 11, 2016, the Defendant filed the Motion for Summary Judgment currently before the Court. In support of the Motion, the Defendant included the Plaintiff's responses to interrogatories and requests for admission, as well as substantial documentary evidence obtained during discovery. For example, in response to the Defendant's requests for admission, the

4

Plaintiff stated that she had not sought deferment, forbearance, or administrative discharge of any of her student loans, nor attempted to avail herself of an income contingent repayment plan to repay her student loans. (Def.'s Ex. A at 7.)

Other documents submitted with the Defendant's Motion, including two letters from the Defendant to the Plaintiff, show that the Plaintiff actually did seek one form of administrative discharge of her student loans, or at least began the process to do so. The first letter, dated October 14, 2015, confirms the Defendant's receipt of an application from the Plaintiff for a Total and Permanent Disability (TPD) discharge. (Def.'s Ex. B.) The second letter, dated November 12, 2015, states that the TPD discharge had been denied because of a failure to submit supporting documentation, including a disability determination by the Social Security Administration, and because of failure to respond to the Department's request to provide such documentation. (Def.'s Ex. M at 1.) The letter also notes that the Plaintiff could, within one year of the date of that letter, provide that additional information and cause the Department to reevaluate the application for a TPD discharge without requiring a new application. (*Id.* at 2.) Given the date of that letter, the window for submitting the required documentation has not expired as of the date of this Memorandum Decision.

The Plaintiff filed her response to the Motion on April 7, 2016 (the "Response"). The Plaintiff's sole supporting exhibit is her own one-page affidavit reciting the basic elements of an undue hardship finding.

The Defendant filed its reply in support on April 22, 2016, arguing that the Plaintiff's response failed to demonstrate the existence of a disputed issue of material fact on issues on which the Plaintiff bears the burden of proof.

The Court took the matter under advisement.

**LEGAL ANALYSIS**

Section 523(a)(8) of the Bankruptcy Code makes most student loans nondischargeable in bankruptcy, absent a showing of "undue hardship." 11 U.S.C. § 523(a)(8). The burden of showing an undue hardship is on the Plaintiff, who is seeking to discharge a student loan otherwise subject to 11 U.S.C. § 523(a)(8). *Dolph v. Pennsylvania. Higher Education Assistance Agency (In re Dolph)*, 215 B.R. 832, 836 (B.A.P. 6th Cir. 1998). To carry her burden, the Plaintiff must prove that "(1) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005) (quoting *Brunner v. N.Y. State Higher Education Services Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir. 1987) (per curiam)).[1] The Plaintiff must prove each element of the *Brunner* test by the preponderance of the evidence. *Barrett v. Educational Credit Management Corp. (In re Barrett)*, 487 F.3d 353, 358 (6th Cir. 2007). Therefore, if she fails to prove all three—or, at the summary judgment stage, if the Defendant shows that the Plaintiff could not prove any one of the three at trial—then the debt cannot be held dischargeable as an undue hardship.

In this case, while genuine issues of material fact would remain for trial on the first two issues, the Defendant has introduced sufficient material into the record to show that the Plaintiff cannot prove that she made a good faith effort to repay her student loans. Under the *Brunner*

---

[1] The legal issue concerning the proper standard for applying 11 U.S.C. § 507(a)(8)'s "undue burden" exception to the general rule that student loan debts are not dischargeable is not in dispute in this proceeding. The Plaintiff concedes in her Response that the so-called *Brunner* test applies.

test, this is fatal to the Plaintiff's Complaint and thus grounds for summary judgment in favor of the Defendant.

I. **Genuine Issues of Material Fact Would Remain for Trial on the Issues of Whether the Plaintiff Can Maintain a Minimal Standard of Living and the Likely Duration of Such Circumstances.**

   A. **The Defendant's Record Materials Do Not Preclude a Later Finding of Fact That the Plaintiff Is Unable to Maintain a Minimal Standard of Living.**

The materials presented in the Defendant's Motion are insufficient to establish a clear absence of any issue of material fact for trial on the first and second prongs of the Brunner test. The Defendant's own argument, based on income records included as exhibits to its Motion, is that the "Plaintiff's net income for 2016 will be $10,666.12" (Mem. in Supp. 13) and that "the poverty line for a family of two in the contiguous United States is $16,020." (*Id.* at 14.)  In other words, her wage income is a full-one third below the poverty line. The Defendant adds that this income is supplemented with $330 per month in food stamps (*id.* at 13), but even that supplemental income still leaves the Plaintiff below the poverty line by approximately nine percent.

The Defendant cites *Campton v. U.S. Department of Education*, 405 B.R. 887 (Bankr. N.D. Ohio 2009) in support of its argument. However, not only is that case distinguishable on its facts, the very passage that the Defendant cites in support of its argument implies that the Plaintiff *might*, in fact, be able to meet the first element of the *Brunner* test. "While a minimal standard of living does not mandate that a debtor live in poverty … it does mean that the debtor is expected to do some financial belt-tightening and forego amenities to which he may have become accustomed." *Id.* at 891 (quoted in Mem. in Supp. 13). In other words, it would still be legally and factually possible for a debtor to prove an inability to maintain a "minimal standard of living" even if she were *above* the poverty line. By contrast, the Plaintiff here has income

7

below that "minimum standard of living" even after including her food stamp income. In fact, in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir. 1994), cited elsewhere in the Defendant's brief, the Sixth Circuit upheld lower court findings that the debtors in that case met the first prong of the *Brunner* test with an income slightly above the then-current poverty line. *Id.* at 359.

In *Campton*, the bankruptcy court found that the debtor in that case could not meet the first prong of the *Brunner* test because that debtor was able to pay $160.00 per month on a boat, $100.00 per month on cable television, and $120.00 per month on cigarettes. *Id.* at 891. These were obvious targets for some of the belt-tightening contemplated. By contrast, the Defendant here argues only that the Plaintiff "pays for rent, renters' insurance, car insurance, all her utilities, and Internet access." (Mem. in Supp. 14.) These expenditures are not, on their face, the equivalent of burning $380 per month on a boat, cable TV, and cigarettes; they are not obvious targets for the kind of belt-tightening contemplated by *Campton* to satisfy *Brunner*. Even the Defendant does not follow the argument to its necessary conclusion and suggest that the Plaintiff could and should *cease* paying for rent, renters' insurance, car insurance, utilities, or even Internet access in order to free up discretionary income for student loan payments.

To prevail on summary judgment on this issue, the Defendant would need to show the existence of a fact that would make it impossible for the Plaintiff to prove at trial, regardless of other facts, that she cannot maintain a minimal standard of living. The items cited in the record do not make such a showing. The Court is in no way prepared to summarily judge that the ability to afford rent, utilities, and insurance on top of food through food stamps necessarily precludes a debtor, at trial, from showing an inability to maintain a minimal standard of living.

### B. The Defendant's Record Materials Do Not Preclude a Later Finding of Fact That the Plaintiff's Circumstances Would Persist for a Significant Portion of the Student Loan Repayment Period.

Similarly, the materials submitted in support of the Defendant's Motion do not establish any facts, or absence of facts, that would preclude the Plaintiff from showing at trial that her financial circumstances would persist for a substantial portion of the student loan repayment period. The Defendant fairly observes that to satisfy this second prong of the *Brunner* test, the additional circumstances shown "must be indicative of a certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler* at 386 (quotation omitted). "They may include illness, disability, a lack of useable job skills, or the existence of a large number of dependents …. And, most importantly, they must be beyond the debtor's control, not borne of free choice." *Id.* at 386 (quotation omitted). "The debtor must have done everything within their power to improve their financial situation." *Storey v. National Enterprise System (In re Storey)*, 312 B.R. 867, 872 (Bankr N.D. Ohio 2004) (cited in *Oyler* at 386).

The Plaintiff has alleged that she suffers from health problems of an unspecified nature. (Compl. ¶ 8; Resps. to Def.'s Interrog. No. 11.) The items submitted so far are vague and unsubstantiated and would clearly be insufficient for the Plaintiff to prove at trial illness or disability severe enough to satisfy the second prong of *Brunner*. However, the items provided by the Defendant do not preclude a finding that the Plaintiff suffers from illness or disability, or a lack of useable job skills, such that her financial condition is unlikely to improve in any way that would be allow for a minimal standard living on top of student debt service payments. Because of the lens through which the Court must currently view the facts, the Plaintiff is not entitled to summary judgment on the second element of the *Brunner* test.

**II.     The Defendant Has Shown the Absence of Any Material Dispute Regarding Whether the Plaintiff Has Made a Good Faith Effort to Repay Her Debts.**

On the third prong of the *Brunner* test, however, the Defendant has cited sufficient materials in the record to show that the Plaintiff has not made a good faith effort to repay her student loan debts.  The Court focuses here not on the fact of nonpayment, though it is undisputed that the Plaintiff has never made any payments on her student loans.  Good faith is a fact-specific analysis, and a debtor's failure to make payments is relevant to the analysis but not dispositive; the Defendant itself notes in its brief that the good faith requirement does not mandate loan payments when a debtor's circumstances make such payments impossible.  *See Alston v. U.S. Department of Education (In re Alston)*, 297 B.R. 410, 414 (Bankr E.D. Pa. 2003); *Grove v. Educational Credit Management Corp. (In re Grove)*, 323 B.R. 216, 226 (Bankr. N.D. Ohio 2005).  Bankruptcy courts consider the following factors relevant to the analysis:

> (1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;
>
> (2) whether the debtor has realistically used all their available financial resources to pay the debt;
>
> (3) whether the debtor is using their best efforts to maximize their financial potential;
>
> (4) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;
>
> (5) the percentage of the student loan debt in relation to the debtor's total indebtedness.
>
> (6) whether the debtor obtained any tangible benefit(s) from their student loan obligation.

*Flores v. U.S. Department of Education (In re Flores)*, 282 B.R. 847, 856 (Bankr N.D. Ohio 2002).[2] Furthermore, while deciding to forego alternative arrangements such as the income-contingent repayment plan are not *per se* proof of bad faith, they are probative of the debtor's intent and the failure to utilize, or at least attempt to utilize, such alternatives should be explained. *See Barrett*, 487 F.3d at 364; *see also Tirch v. Pennsylvania Higher Education Assistance Agency (In re Tirch)*, 409 F.3d 677, 682-83 (6th Cir. 2005). "It is difficult, though not necessarily an insurmountable burden for a debtor who is offered, but then declines the government's income contingent repayment program, to come to this Court and seek an equitable adjustment of their student loan debt." *Tirch* at 682 (quotation omitted).

This latter concern weighs heavily in the Court's analysis of the issue. The Defendant has submitted and cited to sufficient uncontested evidence in the record to demonstrate an absence of any material factual dispute for trial on this issue. Not only might the Plaintiff have been eligible for the government's income contingent repayment program or income based repayment program (the latter of which, the Defendant fairly observes, would have resulted in payments of $0) (Mem. in Supp. 18), but she might even have been eligible for an administrative total permanent disability discharge of the debts to the Defendant. In fact, the uncontested record shows that the Plaintiff even began her application for such a discharge and then failed to supplement with required documentation, resulting in the denial of that application.

The Plaintiff's Response to the Defendant's Motion on this issue states that she "did apply for a total and permanent disability discharge through the U.S. Department of Education to have her student loans forgiven," but that this was denied "in part due to not submitting the

---

[2] A different part of the *Flores* ruling, holding that student loan debts could be equitably adjusted or "partially" discharged via the bankruptcy court's powers under 11 U.S.C. § 105(a), was abrogated by *Miller v. Penn. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616 (6th Cir. 2004).

11

required documentation to support her eligibility." (Resp. 2.) Put another way, she submitted an incomplete application. Furthermore, the Plaintiff's sole rebuttal is a conclusory affidavit from the Plaintiff stating "I have made a good faith effort to repay my student loans." (Resp. Ex. 1.) This vague and unsupported protest of good faith is insufficient to counter the undisputed facts, and the related complete lack of explanation for any reason why she did not take advantage of her administrative options. For example, by contrast, in *Barrett*, the Sixth Circuit held that the debtor in that case had supported his decision not to pursue an income contingent repayment plan because of certain tax consequences that he would have faced in doing so. *Barrett*, 487 F.3d at 365. The Plaintiff here has offered no such justification for her failure to pursue any administrative options for dealing with her student loan.

## CONCLUSION

Because the Plaintiff would be required to prevail on all three prongs of the *Brunner* test at trial to allow her student loan debts to be discharged as an undue hardship, the U.S. Department of Education can prevail upon summary judgment if it demonstrates, pursuant to Rule 56(c), the absence of any genuine issue of material fact on any one of those prongs, *i.e.*, that regardless of what other facts might be introduced at trial, there is at least one prong that the Plaintiff cannot satisfy. The Defendant has done so with respect to the third prong of the *Brunner* test by showing that the Plaintiff submitted an incomplete application for administrative discharge of her debt with the Department based on total and permanent disability, which was denied as the result of her failure to respond and failure to submit supporting documents even when offered the opportunity to do so. The Plaintiff has also admitted that she made no effort to enter an income contingent repayment plan or income based repayment plan. Coupled with the absence of explanation from the Plaintiff on this issue, these undisputed facts show an absence of
12

any issue of material fact for trial on the good faith issue. Therefore, the Defendant is entitled to summary judgment.

The Court will enter a separate form of judgment granting summary judgment in favor of the Defendant consistent with this Memorandum Decision. Judgment in favor of the Defendant in this adversary proceeding will not be deemed entered until the separate form of judgment has been docketed by the Clerk.

# # #

13

15-05054-amk    Doc 22    FILED 10/06/16    ENTERED 10/06/16 16:40:02    Page 13 of 13